```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    KYENNA McCONICO and KENNETHA     )
      BARNES, as independent           )      Case No. 24 C 1654
 4    co-administrators of the Estate  )
      of ISAAC GOODLOW III, Deceased,  )
 5                                     )
                   Plaintiffs,         )
 6                                     )
         v.                            )
 7                                     )
      VILLAGE OF CAROL STREAM, a       )
 8    municipal corporation, VILLAGE   )
      OF CAROL STREAM POLICE OFFICERS  )
 9    JOHN DOE #1-6,                   )      Chicago, Illinois
                                       )      April 18, 2024
10                 Defendants.         )      9:30 a.m.

11              TRANSCRIPT OF PROCEEDINGS - MOTION HEARING
                 BEFORE THE HONORABLE JOHN F. KNESS
12
      APPEARANCES:
13
      For the Plaintiffs:        HART MCLAUGHLIN & ELDRIDGE, LLC
14                               BY:  MR. STEVEN ALAN HART
                                 1 S. Dearborn Street, Suite 1400
15                               Chicago, Illinois  60603

16    For the Defendants:        BEST VANDERLAAN & HARRINGTON
                                 BY:  MS. ALISON M. HARRINGTON
17                               25 E. Washington Street, Suite 800
                                 Chicago, Illinois  60602
18

19
      Court Reporter:            NANCY C. LABELLA, CSR, RDR, FCRR
20                               Official Court Reporter
                                 219 S. Dearborn Street, Room 2128
21                               Chicago, Illinois  60604
                                 (312) 435-6890
22                               Nancy_LaBella@ilnd.uscourts.gov

23              * * * * * * * * * * * * * * * * * *

24
                  PROCEEDINGS REPORTED BY STENOTYPE
25    TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1       (Proceedings heard in open court:)

2          THE CLERK:  24 cv 1654, McConico v. Village of Carol

3 Stream.

4          THE COURT:  Good morning.

5          MR. HART:  Good morning, your Honor.  Steven Hart on

6 behalf of the Estate of Isaac Goodlow.

7          THE COURT:  Good morning, Mr. Hart.

8          MS. HARRINGTON:  Alison Harrington on behalf of the

9 Village of Carol Stream.

10          THE COURT:  Good morning to you, Ms. Harrington.

11          We're here because this is a newly filed case.  It was

12 filed at the end of February.  I don't believe there's --

13 there's not been a responsive pleading yet or a response to the

14 complaint from the defendant Village.  Is that correct?

15          MS. HARRINGTON:  That is correct, your Honor.

16          THE COURT:  And the issue we have now is this request

17 for early discovery, which is why I set this for an in-person

18 hearing.  Thank you both for coming in on that.  I like to try

19 to get lawyers in in the courtroom in person at least a couple

20 of times during a case, so I figured this would be a good

21 opportunity.

22          It looks to me like the Village of Carol Stream waived

23 service of process; is that right?

24          MS. HARRINGTON:  Correct.

25          THE COURT:  Your deadline for responding to the

1  complaint is when?

2          MS. HARRINGTON:  April 29th.

3          THE COURT:  Understood.  Are you in a position -- you

4  don't have to tell me -- to say whether you expect to answer

5  the complaint or to file a motion directed against the

6  pleading?

7          MS. HARRINGTON:  The anticipation is to file an

8  answer.  There's one issue I was going to raise with Mr. Hart

9  as to part of one of their "wherefore" clauses.  They're

10  seeking punitive damages within survival and the wrongful death

11  counts.  So I wanted to discuss that with him.  That could be

12  subject maybe to a potential motion to strike.

13          THE COURT:  All right.  Thank you for that

14  clarification.

15          The issue of early discovery, of course, is a pretty

16  wide open one.  There's a lot of discretion on the part of the

17  trial court.  I have looked at your pleadings.  We just wrapped

18  up a jury trial, so I have not fully internalized the request

19  for early discovery.  So let me ask you both to please

20  summarize your positions on that.

21          Mr. Hart.

22          MR. HART:  Thank you, your Honor.

23          THE COURT:  If you could use the microphone too,

24  please.

25          MR. HART:  Yes, your Honor.

1          Our position, I think, is clear, very straight-

2    forward, and narrow, your Honor.  We're here asking only for

3    the disclosure of the identity of the officers involved in

4    entering Isaac Goodlow's apartment on February 3rd of this year

5    with their guns drawn when they knew that it was his apartment

6    and he was unarmed.  They were not invited into his apartment.

7    And we believe, and we've alleged, that it was an unlawful

8    entry; and then it resulted in Isaac Goodlow being shot in the

9    chest by the Carol Stream police officers who have been --

10   identity has been withheld from the plaintiff.

11         Plaintiff very quickly asked for the disclosure --

12   preservation of all the relevant information, facts, and

13   circumstances.

14         THE COURT:  Let me stop you there because on that

15   preservation point, is the Village -- and I'll refer broadly to

16   the defendants as the Village, all of them -- is the Village

17   aware of that preservation request and are you complying with

18   it?

19         MS. HARRINGTON:  Yes, your Honor.

20         THE COURT:  Very well.

21         MS. HARRINGTON:  And everything has also been turned

22   over to MERIT, which is the independent task force that's doing

23   the criminal investigation currently -- or investigation, I

24   should say.

25         THE COURT:  All right.  Thank you.  I will come back

1    to you.

2              Go ahead, Mr. Hart.

3              MR. HART:  And so plaintiffs have requested, both

4    formally through written communication and informally through

5    verbal communication, the disclosure of the identity of these

6    six officers who entered Isaac Goodlow's apartment.

7              THE COURT:  Let me just stop you because I want to

8    make sure that I'm clear on both what you're asking for and the

9    process.

10             Are you looking for early 26(a) disclosures?  Or are

11   you looking to serve interrogatories?  What format is this

12   discovery going to take if I allow it?

13             MR. HART:  Thank you, your Honor, because we haven't,

14   I don't think, made it completely clear to the Court.  And it

15   was done intentionally because we don't want form to prevail

16   over substance.  We don't care how they give us this

17   information.

18             What's important to us is the very narrow, tailored

19   request that we're making for just the identity of the

20   officers.  Nothing more.  And so we can do it in a single

21   interrogatory request.  We can even do it informally through a

22   letter request.  But what's important is that the request is

23   extremely narrow and only for the purposes of identifying the

24   officers.

25             THE COURT:  Let me jump in and ask you -- and I'll ask

1   probing questions of both sides, so this is not meant to betray

2   any view on the motion yet.

3        But why do you need this discovery now as opposed to

4   in the ordinary course of litigation?

5        MR. HART:  Yeah, I think it's a fair question.  I

6   think it's a good question in light of your broad discretion on

7   this issue.

8        The answer is that there's a continuing -- it's a

9   couple-fold.  One is there's an extreme and continuing harm to

10  the family.  They've lost their son, as it relates to the

11  parents; their brother and sister, as it relates to the

12  siblings; and the extended family members.  And that is of

13  great mental anguish and harm to them, that their son was taken

14  by the police and, for some reason, they're afforded some

15  special status in not having to disclose their identities.

16  It's not afforded to any other actor in a shooting.  Names are

17  disclosed routinely.

18       We just filed a case against the City, the Reed case,

19  where the officers' names in that shooting were disclosed

20  within hours of the shooting.

21       So it's a continuing mental anguish and harm to the

22  family.  We're two-and-a-half months post-shooting and no one

23  will tell them who shot their son.

24       THE COURT:  With due and great and sincere respect to

25  the grief that the family is experiencing over the death of

1　their family member, what is it about the identity of the

2　officers who were involved in this incident that is

3　contributing to the -- by itself -- as you put it, extreme and

4　continuing harm?

5　　　　In other words, can you tie up what I think anybody

6　could understand is grief and anguish on the part of the family

7　over the death of a loved one, especially under circumstances

8　like these, with the identity of the officers?

9　　　　In other words, it could be Officer Jones.  It could

10　be Officer Kowalski or Officer X.  What difference does that

11　make at this point?

12　　　　MR. HART:  You know, without getting in too deeply

13　into the psychology of the matter, they feel like they're

14　entitled to know the identity of the person that shot their

15　son.  If --

16　　　　THE COURT:  Are there any more pragmatic or prosaic

17　reasons that you would want to know the identity of the

18　officers at this point, such as accelerating your investigation

19　of the case and things like that?

20　　　　MR. HART:  Well, certainly those things exist, right.

21　It would aid in our ability to investigate the case.  We're

22　entitled to, you know, disclosure of information that may be

23　lost or memories that fade over time.

24　　　　I'm setting those issues aside because, to me, there's

25　a more immediate concern having to do with the family's right

1    to just know the identity.

2          And so I would just suggest to your Honor that there

3    is a deep emotional devastation that exists with a family

4    member when they lose someone at the hands of the police and

5    then their identity is protected in some way.

6          So I think closure is the closest that I can come to

7    addressing this -- you know, the DSM-IV Revised, what mental

8    anguish they're going through.  But I know that it's been

9    continual.  It's a nearly daily request of theirs:  Why don't

10    we have the name of the officer?  And they've actually made the

11    request to the Village council as recently, I think, as Monday.

12          So this is a deep issue for them.  And I don't know

13    that I can afford the Court any greater detail into the

14    psychological remedy that this would provide, but I know it

15    would provide them some comfort in knowing that someone cares

16    enough to tell them at least the identify of the officers

17    involved in this event.

18          THE COURT:  Thank you.  Any other reasons besides --

19          MR. HART:  Yeah.  I think that the -- there's public

20    policy reasons here and, also, that this frustrates the trust

21    of the public and the community when names are being withheld,

22    certain privilege is afforded officers that isn't afforded

23    to --

24          THE COURT:  Well, let me ask you -- whatever the

25    public policy reasons are and whatever a Village or a City

1    decides to do with releasing or not releasing the names of

2    people involved, my sole job here is to govern a piece of

3    litigation.  And we have well-established rules over when

4    discovery needs to be provided.  So whatever the public policy

5    arguments are is really not for this forum.

6           The argument for this forum is, under Rule 26, is

7    there good cause for going around the established rule that

8    says parties cannot get discovery until they've conferred, as

9    required by Rule 26(f).  And that's, of course, set forth in

10   Rule 26(d).

11          It may be that the family is frustrated that the

12   Village is not providing the names.  Maybe there's some other

13   avenue for that.  I don't know.  Having worked in the public

14   sector for a long time, as well as at the local government

15   level, I've seen a wide variety of reasons for units of local

16   government to release information or not to release

17   information.  But that's a different forum.

18          Right now what I'm interested in is what the reason

19   is, whether there's good cause for this request.

20          MR. HART:  Yeah.  So I would urge the Court to

21   consider -- at least under the broad discretion afforded these

22   issues, wide discretion to manage the process -- that the

23   public policy concerns should be at least a factor.

24          But when you look at case law, the Ibarra case versus

25   City of Chicago, decided over a decade ago by Judge -- Chief

1   Judge Ruben Castillo, he articulated the reasonableness of the

2   request standard under the totality of the circumstances, which

3   I think is the analysis that the Court must undertake here, and

4   then set out some criteria for examining that under similar

5   circumstances where the plaintiff has requested the identity of

6   the officers involved in a shooting.

7         And Judge Castillo granted that request for expedited

8   discovery.  He found that the request that identified the

9   officer's name only was a narrow one; that the information was

10   readily available to the defendant, the City of Chicago in that

11   case.

12         And of course the Village isn't claiming that this

13   information is not readily available to them.  It is.  There's

14   zero burden on the City to produce the identity -- remember,

15   only the identity -- of the officers.  And so I think we --

16         THE COURT:  Let me ask you, because I have not read

17   the Ibarra case --

18         MR. HART:  I do have a copy for your Honor if you

19   would like.

20         THE COURT:  I'd like to see that if you don't mind.

21         MR. HART:  Sure.

22         THE COURT:  Thank you.

23    (Tendered.)

24         THE COURT:  Give me just a moment here.  Thank you.

25         MR. HART:  And it's --

1    THE COURT:  If you could point me to where he grappled
2  with the statutory -- or rule-based standard, that would be
3  helpful.
4    MR. HART:  Yeah.  It's one, two three, four, five,
5  six, seven, eight, nine, ten, 11, 12 -- it's 13 pages back.  Or
6  it's four -- or three pages from the end, if that's easier,
7  under motion for expedited discovery, Section VI of the
8  holding.
9    THE COURT:  I see it.  Thank you.
10    MR. HART:  Yes.
11    THE COURT:  Give me just a moment, please, Mr. Hart.
12    (Brief pause.)
13    THE COURT:  The print here is a little cut off at the
14  bottom of my second to last page, but I think I get the point.
15    As far as I can tell, Judge Castillo, who at that
16  point was -- I don't know if he was -- he was not chief judge
17  at that point.  Then Judge Castillo noted the -- what I've
18  noted as well over the years, is that there's kind of two
19  approaches to early discovery.  One is a multi-factor test.
20  And the other is -- the other, which I believe Judge Castillo
21  took here; it appeared that he explicitly adopted that
22  approach.  But the second approach was the court should
23  evaluate a motion for expedited discovery, quote, on the
24  entirety of the record to date and the reasonableness of the
25  request in light of all the surrounding circumstances, end

1    quote.

2              That's noted in Southern District of -- one second.

3              A Northern District of Illinois case from 2000,

4    Merrill Lynch v. O'Connor, 194 F.R.D. 618 at page 624.

5              It appears that Judge Castillo looked at the requests

6    made there, said they were narrowly tailored, and that they

7    were reasonable.

8              With due respect to Judge Castillo, I think that the

9    good cause standard of Rule 26 requires a little bit more

10   analysis than merely saying it sounds reasonable.

11             And to that end, I am more persuaded, in general, by

12   the approach that has been noted in Sony Music Entertainment v.

13   Doe 1-40, a Southern District of New York case from 2004,

14   reported at 326 F. Supp. 2d 556.  That's a five-part test.  It

15   says a court should first -- well, before granting a request

16   for early discovery, a court should require a showing of,

17   number one, a prima facie claim of actionable harm; two, the

18   specificity of the discovery request; three, the absence of

19   alternative means to obtain the subpoenaed information; four, a

20   central need for the subpoenaed information to advance the

21   claim; and, five, consideration of the defendant's privacy

22   interests.

23             Having heard this -- and I'm putting you on the spot,

24   Mr. Hart, I recognize that -- under that test, do you think the

25   request for early discovery meets the good cause standard?

1          MR. HART:  So I didn't get all --

2          THE COURT:  Let me do it one at a time.

3          MR. HART:  I look -- I heard part of it and --

4          THE COURT:  Well, let me just say the test is really:

5    Is there a prima facie claim of actionable harm?  I'll assume

6    that's present here.

7          Two, specificity of the discovery request.  I will

8    assume, without even hearing from the defendant, that that's

9    met.

10         Three, the absence of alternative means to obtain the

11   subpoenaed information.  I'll assume that's met because, as of

12   now, Ms. Harrington, it sounds like the Village is not willing

13   to provide this information.  Is that correct?

14         MS. HARRINGTON:  Correct.

15         THE COURT:  So there's no alternative means for the

16   plaintiffs.

17         I'll skip over four and go to five, which is

18   consideration of the defendants' privacy interests.  Does the

19   Village assert any privacy interests on behalf of the

20   unidentified officers?

21         MS. HARRINGTON:  I mean, at this juncture while

22   they're undergo- -- or under -- subject of an investigation

23   that's near its conclusion, I do think they have a privacy

24   interest in the outcome of whether their name is disclosed

25   prior to it being known whether they're going to be charged

1    with a criminal act or not.

2         THE COURT:  Well, leaving aside whatever -- here's

3    another point, frankly, at this stage, whatever happens in the

4    criminal case has nothing to do with this case.  It may

5    eventually for various reasons; but for now, for purposes of

6    identifying the officers, unidentified officers have been named

7    in a lawsuit.  People sue people all the time.  Sometimes they

8    win, sometimes they don't.  We don't know what will happen in

9    this case.  I'm going to assume that there's a prima facie

10   claim on the part of the plaintiffs, without having seen any

11   motion to dismiss or any of the facts of the case.

12        But whether there's a criminal case or not against

13   them, the plaintiff, through counsel, subject to Rule 11, has

14   said that these officers committed civilly actionable conduct.

15   They're entitled to do that under the rules.  So whether these

16   officers are charged or not is really not material to whether I

17   should require early discovery to identify who they are.

18        Do you have any reason to tell me right now that their

19   identities will always remain under seal, if you will, in this

20   case?

21        MS. HARRINGTON:  No.

22        THE COURT:  Okay.  So it seems to me then -- I will

23   say that I think under this non-binding test, which is intended

24   only to provide guidance in a very wide-open discretionary call

25   under Sony Music, the case that I've been reciting from, I'll

1  assume as well that the defendants' privacy interests are not

2  all that great.

3          It seems to me that this boils down to what we talked

4  about at the beginning, which is factor four of the Sony Music

5  test.  And that's a showing that the plaintiff has a central

6  need for the information to advance the claim.  That's what I'm

7  going to focus on.

8          I'll let the defendant focus on that now and I'll come

9  back to you, Mr. Hart.

10          MS. HARRINGTON:  At this juncture, your Honor, I mean,

11  we are essentially at the beginning of this case.  From my

12  standpoint, what they're asking the Court to do is to kind of

13  hop ahead into discovery without meeting and -- and obviously

14  you rely upon the Sony Music case.  We responded and addressed

15  the Ibarra matter that they brought forth.

16          But from our standpoint from this case, there's no

17  issue as to a statute of limitations.  There's no pressing

18  issue from otherwise -- from a pleading issue that would

19  require the -- you know, the disclosure at -- you know, any

20  immediacy.

21          They relied heavily on the Ibarra matter.  And in the

22  Ibarra matter, it -- procedurally the two cases are incredibly

23  different.  In Ibarra the case had been pending for over a year

24  and a half, with a motion to dismiss that the court was

25  simultaneously ruling upon.  And so the court had an interest

1  of moving that case forward because it had been pending for

2  that period of time and likely had statute of limitations

3  issues presented for the plaintiff potentially at that point.

4           Here, there is no pressing issue requiring the

5  disclosure of this information outside the normal means of the

6  discovery process that the rules provide.

7           And with complete and all due respect to the

8  plaintiff's family, I understand the grief that they clearly

9  are having to go through in losing a family member.  But the

10 defendants have a right to be able to -- one, there is going to

11 have to be a determination is there going to be conflicts

12 created because of a potential criminal pending action or not.

13          THE COURT:  Again, I don't understand what that has to

14 do with the question of early discovery.  I don't get that.

15 Maybe I'm missing something, and it's entirely possible.  I

16 don't see what the criminal case has to do one iota with this

17 question of early discovery.  I don't understand that.  So

18 maybe you can enlighten me on that.

19          MS. HARRINGTON:  Well, I can see what you're saying,

20 your Honor.  I mean, I do.  But I guess the point is the

21 plaintiff is coming in here asking the Court to abrogate the

22 normal process in Rule 26.

23          THE COURT:  On that point, as I take your argument,

24 which you're entitled to make, I'll tell you what I am not

25 hearing and I'll tell you what I am hearing and you can correct

1   me if I'm wrong.

2           What I'm not hearing is any argument as to why there's

3   really any practical reason to withhold the identity of these

4   officers at this point.  We all know their identities are going

5   to be disclosed in this case, and it's going to happen sooner

6   than later probably, within two months I would imagine, maybe

7   three, but more likely two.

8           Really, as I understand your argument, is you're just

9   standing on what the rules say?

10          MS. HARRINGTON:  Correct.  And just from a -- I guess

11  from a practical standpoint, your Honor, the practical

12  standpoint is you have individuals that are -- and this is why

13  I go back to the criminal investigation -- they have a criminal

14  investigation pending.  When their identity is disclosed to the

15  public, if that issue is resolved, they either have the charge

16  pending or the decision to not charge is -- so they don't have

17  something pending against them.  That is the interest of the

18  police officers.

19          THE COURT:  Again, though, what connection to a piece

20  of civil litigation does that have?  I mean, if Joe or Jane Q.

21  Public can put two and two together and say this case received

22  some public light, it's a controversial case, various officers

23  were involved in an incident, a use of deadly force incident,

24  some other public entity has made it known that there is a

25  pending, potential, criminal investigation, that's for other

1 entities to deal with.

2        Here, if somebody in the public wants to put two and

3 two together, that's up to them.  I'm going to stand on my

4 understanding of your argument, which is that the rules don't

5 allow it unless there's good cause and here there's no good

6 cause.  Is that basically your argument?

7        MS. HARRINGTON:  Agreed.

8        THE COURT:  Okay.  So let me turn back to Mr. Hart and

9 ask about the good cause again, with the gloss of the question

10 whether there's a central need for the subpoenaed information

11 to advance the claim at this point.

12        MR. HART:  Yeah, well, I think we do satisfy that

13 requirement, your Honor, from a technical standpoint.  I mean,

14 the fact is that we're trying to get the necessary parties in

15 this case.

16        THE COURT:  Well, that's not really a fair

17 construction of the Sony test because that's the case in every

18 situation.  So Rule 26 says you don't get early discovery

19 unless there's good cause for early discovery.

20        You're going to get your discovery and you can move

21 your case forward.  No case can move forward without discovery.

22 But the rules set forth a pattern.

23        So what is the extra special need for moving the case

24 forward at this time that is not met by Rule 26?

25        MR. HART:  Fair enough, your Honor.  Although I do

1  think there is a distinction as it relates -- we're not trying

2  to get a jump on our discovery rights here to do something

3  extraordinary before the normal course this case takes.

4           But I do think it's instructive that this is a

5  circumstance where the identity of the parties is readily known

6  to a defendant in the matter, cannot be gotten any other way,

7  and it will advance the case.  So this is a very, very narrow,

8  narrow scope here.  And it will delay the case, as a point of

9  fact, if we don't get it for two or three months.  Then we have

10 to name them, file a request to amend the complaint, serve

11 them.  It just doesn't seem reasonable or practical to take

12 that route.  That's form over substance and it just, to me,

13 your Honor, respectfully, is a technicality that should not be

14 observed here.

15          THE COURT:  Okay.

16          MR. HART:  I also --

17          THE COURT:  I'll give you one more minute and then I'm

18 going to make a ruling.

19          Go ahead.

20          MR. HART:  Yeah.  And I don't mean to belabor the

21 point, but I think I did articulate before that there is a

22 substantial harm to the family having these names withheld from

23 them.

24          THE COURT:  Okay.  Thank you, Mr. Hart.

25          I'm going to deny the request for early discovery.

1   Let me tell you why.  Mr. Hart has made a very able argument on

2   behalf of the plaintiffs.  But as I see this issue, and as

3   informed by the helpful discussion from counsel for both sides

4   today, I'm a believer in following the Rules of Civil

5   Procedure.  Rule 26 sets out a pretty clear standard that says

6   a party may not seek discovery from any source until the

7   parties have conferred as required by Rule 26(f).  That's, of

8   course, set forth in Rule 26(d).  But parties can seek early

9   discovery with leave of Court if there's good cause.

10          I've talked about the Sony Music Entertainment case

11  from the Southern District of New York, which is, of course,

12  not binding on me, but I use it as an instructive decision.

13          Ibarra is instructive as well.  That, of course, is a

14  decision from Judge Castillo.

15          As I see this motion, it boils down to whether there

16  is a central need for the information that Mr. Hart is seeking,

17  whether there's a central need for that information to advance

18  the claim.

19          I understand your argument, Mr. Hart.  It's well-

20  presented.  But I don't see that there's a central need to get

21  out ahead of the ordinary course under Rule 26.  It may very

22  well be that there is no great practical reason for the Village

23  of Carol Stream not to provide this information now, but I'm

24  not here to set public policy.  I'm here to follow the Rules of

25  Civil Procedure.  And a party is entitled to rely on the

1    language of the rules.

2            The arguments that have been advanced as to why early

3    discovery is needed here -- on what I readily admit is an

4    extremely narrow and focused request -- but the reason that's

5    been proffered to me, the extreme and continuing harm to the

6    family, as Mr. Hart has put it, doesn't persuade me that this

7    discovery will ameliorate that extreme and continuing harm.

8    The family members will get this information, almost certainly

9    in the near term, too.  But there's no good cause that I can

10   see to make an exception here on public policy grounds and on

11   what effectively are grounds that, well, it's a really tiny

12   request so let's just do it.  That's not an articulable

13   standard in my mind.

14           I understand why Judge Castillo went the way he did in

15   Ibarra.  Judge Castillo may or may not have been motivated by

16   questions of public policy in that case.  I don't know.

17   Ms. Harrington has identified a possible reason that that

18   discovery was necessary, namely, that the claim was older,

19   there was a pending motion to dismiss, and it needed to be

20   moved forward.  That may very well have been the primary or

21   sole motivation of Judge Castillo.

22           But he made a decision in that case within his

23   discretion.  And in my discretion, I don't see good cause here

24   to get out ahead of the ordinary course.

25           So we have a responsive pleading deadline of when?

1    April 26th did you say?

2             MS. HARRINGTON:  29th, your Honor.

3             THE COURT:  29th.  Given the interests of the

4    plaintiffs here, I'm not likely going to extend that.  We may

5    have extended it already.  I don't think we did.  But I'm not

6    likely to extend that.  I would like you both to meet and

7    confer sooner than later on your Rule 26 obligations.  I'm

8    going to set a schedule in this case, depending on what happens

9    with the responsive pleading issue.  The rule requires that the

10   Court enter a Rule 16 scheduling order within 90 days of

11   service or 60 days of the appearance of any party.  I have not

12   calculated those dates.  I'll trust that Mr. Hart will be all

13   over that in the interest of moving the case forward.

14            Let's talk about when to have an initial scheduling

15   conference.  When do you suggest, Mr. Hart?

16            MR. HART:  I would ask for the first week in May.  I

17   think that's certainly sufficient time for the parties to meet

18   and confer and would be after the responsive pleading, which

19   appears will be an answer.  That would be plaintiff's

20   preference.

21            THE COURT:  What's the defendant s' view?

22            MS. HARRINGTON:  I was looking for actually mid-May

23   just because of a trial schedule, but I don't know that there's

24   a huge difference there.

25            MR. HART:  No problem.

1    THE COURT:  Thank you, Mr. Hart.  And thank you,

2  Ms. Harrington.  When you say mid-May, are you talking the week

3  of May 13th or May 20th?

4    MS. HARRINGTON:  May 20th.

5    THE COURT:  All right.  I will set it during that

6  week, provided we don't have any barriers here.  Stand by for a

7  date, please.

8    (Brief pause.)

9    THE CLERK:  May 22nd at 9:30.

10    THE COURT:  And that will be by telephone unless you

11  all want to come in again.  Mr. Hart, do you prefer telephone

12  or in person?

13    MR. HART:  I enjoy being in court, your Honor, so I

14  would elect in person.  But if the Court's preference is by

15  phone, we're certainly happy to accommodate that as well.

16    THE COURT:  What's the Village's position, Ms.

17  Harrington?

18    MS. HARRINGTON:  In person is fine, your Honor.

19    THE COURT:  Here's what I'm going to do, I'm going to

20  set it for an in-person hearing.  Depending on what the Rule 16

21  proposed order looks like, I may just enter that order if

22  you're largely in agreement and strike the hearing.  And,

23  spoiler alert, there's a very good chance if things go as

24  Ms. Harrington has suggested -- and you're not bound to that

25  course naturally -- but if there's an answer on the principal

1  claims here as opposed to a motion to dismiss, I will likely

2  refer the case to the assigned magistrate judge because you'll

3  get a little more attention and a little more guidance.  And I

4  expect there will be some discovery issues to work through.

5  It's Judge Fuentes.  All of our magistrate judges are excellent

6  here.  He is particularly experienced in cases like this.  So

7  the odds are I will refer the case to him, and he may set a

8  different schedule.

9       But I'm going to ask you to please have that proposed

10  Rule 16 order submitted -- the planning report filed on the

11  docket and a proposed order submitted to me -- what was our

12  date, Ms. Reyes?

13       THE CLERK:  May 22nd.

14       THE COURT:  May 22nd.  If you could have that in a

15  week beforehand, I think that would be helpful.  And I may

16  enter the order or I may just refer it to the magistrate judge.

17  We'll wait and see what happens.

18       Please look at my web page.  I've got a template there

19  and detailed, turgid instructions on how to prepare that.  So

20  please take a look at that and heed that if you would.

21       Mr. Hart, I understand that I didn't come out the way

22  you wanted, but I heard your argument.  It's a well-presented

23  argument, but I had to make a ruling, so there it is.  Thank

24  you for coming in.

25       Is there anything further from either side?

25

1    MR. HART:  Not from plaintiff, your Honor.

2    MS. HARRINGTON:  Not from defendant, your Honor.

3    THE COURT:  All right.  Have a good remainder of the

4  week.

5    MR. HART:  Thank you, your Honor.

6    MS. HARRINGTON:  Thank you, your Honor.

7    (Which were all the proceedings had.)

8                        *    *    *    *    *

9

10  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

11

12
    _/s Nancy C. LaBella___                  _May 10, 2024_
13  Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25