UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYENNA MCCONICO, ET AL., Plaintiffs, v. VILLAGE OF CAROL STREAM, ET AL., Defendant. | No. 24 CV 1654 District Judge Kness Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is defendants' motion to compel discovery of decedent's mental health and substance abuse treatment records and for entry of HIPAA/mental health protective order. [169].[1] For the following reasons, the motion is denied.

**Background**

This is a civil-rights and wrongful-death case that arises from the death of Isaac Goodlow III, who was killed by a Carol Stream police officer during a response to a domestic disturbance call at Goodlow's apartment. *See* [33]. Plaintiffs, who are Goodlow's sisters and the administrators of his estate, allege that the defendant police officers entered the apartment "without consent, without warning, without a warrant, and without probable cause." [*Id.*] at 2. According to plaintiffs, one of the officers, defendant Daniel Pfingston, kicked open Goodlow's bedroom door and shot Goodlow, who was unarmed, without justification. [*Id.*] at ¶¶ 25-27; *see also* [169-7] 2. Plaintiffs bring multiple claims under 42 U.S.C. § 1983 and Illinois tort law against the officers and the Village of Carol Stream. *See* [33] 14-35.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. To resolve this motion, the Court has had to review and discuss a sealed filing, but the Court has attempted to avoid unnecessary discussion of any privileged information. To the extent the Court has discussed such material, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

At issue in the pending motion is whether defendants may discover Goodlow's mental-health treatment records.[2]

Defendants Steven Cadle and the Village of Carol Stream served written discovery requests seeking the identities of Goodlow's medical providers and the corresponding treatment records. *See* [169-2] 6-7 (Cadle's interrogatories 9 and 11); [169-3] 8, 17-18 (Cadle's RFPs 8 and 45); [169-4] 8 (Carol Stream's RFPs 11 and 12). Plaintiffs objected to these requests to the extent they related to Goodlow's "mental health [and] therapy history," contending that their claims had not put Goodlow's mental condition at issue. [169-2] 6. According to plaintiffs, they are seeking to recover for only the "garden variety" type of emotional distress that Goodlow would have experienced between the time defendant Pfingston "kicked open the door to his bedroom, pointed his handgun at Isaac, and shot him." [169-7] 2. Defendants maintained that the treatment records were "relevant to Plaintiffs' claims, Mr. Goodlow's mental and physical health, and his relationship with his family members." [171] 3-4. In support, defendants pointed to allegations in the complaint that "Defendants' misconduct caused Goodlow to suffer various injuries," including "mental anguish," "emotional anguish," "fear," "anxiety," and "emotional distress." [*Id.*] 2. Defendants also argued that Goodlow's health, his physical and mental characteristics, and his relationship with his next of kin were relevant to calculating the damages for plaintiffs' claims under Illinois's Wrongful Death Act. [*Id.*]. Finally, defendants noted that certain medical records produced by plaintiffs (large portions of which were redacted, based on plaintiffs' privilege claim) revealed that Goodlow had been admitted to Central DuPage Hospital in May 2021, where he was prescribed quetiapine and "endorsed homicidal ideation with a non-specific plan to harm his sister." [*Id.*] 3.

The parties met and conferred on this issue in accordance with the Court's protocol for discovery motions in this case, *see* [158], but could not reach an agreement. *See* [171] (defendants' Local Rule 37.2 letter); [169-7] (plaintiffs' Local Rule 37.2 response); [169-8] (transcript of parties' April 16, 2025, meet-and-confer session).

---

[2] It is unclear from the parties' briefing whether this discovery dispute concerns a discrete category of documents concerning Goodlow's substance-abuse treatment (if any). Two of the discovery requests at issue seek information related to any substance-abuse treatment Goodlow might have undergone. *See* [169-2] 6 (Cadle's interrogatory 9); [169-4] 8 (Village's RFP 11). In the briefing and meet-and-confer materials, however, the parties essentially lumped each discovery request at issue under the general category of mental-health treatment and focused on whether such records were relevant and/or privileged. There was no discussion of any substance-abuse records or the standard applicable to such records, separate and apart from the parties' discussion of whether Goodlow's mental-health records were relevant or privileged, during the parties' meet-and-confer session. *See* [169-8]. Accordingly, this decision addresses only whether Goodlow's mental-health records are privileged.

2

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021). "[T]he resolution of discovery disputes is committed to the court's extremely broad discretion." *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

## Discussion

Defendants' motion presents three issues for the Court to resolve: (1) what standard the Court should apply to determine if plaintiffs have impliedly waived the psychotherapist-patient privilege by putting Goodlow's mental-health treatment at issue; (2) whether plaintiffs' allegations and the damages they seek have put Goodlow's mental state at issue under the controlling standard; and (3) whether Goodlow or his attorneys expressly waived the privilege.

### A. Implied Waiver

#### 1. Applicable Standard

The parties agree that this privilege dispute is governed by the federal common law psychotherapist-patient privilege,[3] which "prevents disclosure of confidential communications between a licensed psychotherapist or social worker and a patient in the course of diagnosis or treatment." *Coleman v. City of Chicago*, Case Nos. 17-CV-8696 & 18-CV-998, 2019 WL 7049918, at *2 (N.D. Ill. Dec. 23, 2019). "The privilege serves to protect the relationship of confidence and trust on which effective psychological treatment depends and thus 'serve[s] a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Flowers v. Owens*, 274 F.R.D. 218, 223 (N.D. Ill. 2011) (quoting *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996)). The existence of the privilege "is not contingent upon a trial judge's later evaluation of the relative importance of the patient's interest

---

[3] Federal privilege law applies because plaintiffs have brought federal-question claims against defendants. *See Murdock v. City of Chicago*, 565 F. Supp. 3d 1037, 1042 (N.D. Ill. 2021) ("Evidence Rule 501 provides that federal common law, not state law, governs a claim of privilege in federal question suits.") (internal quotation marks omitted). This is the case even though plaintiffs have also brought state-law claims. *See Awalt v. Marketti*, 287 F.R.D. 409, 414 n.3 (N.D. Ill. 2012) (applying federal psychotherapist-patient privilege in case where plaintiff brought § 1983 claims and claims under Illinois law).

3

in privacy and the evidentiary need for disclosure[.]" *Jaffee*, 518 U.S. at 17. But the privilege "is not absolute," and "plaintiffs waive the privilege by placing their mental health at issue." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 512 (N.D. Ill. 2018) (internal quotation marks omitted).

There is a split of authority among the district courts in Illinois (and across the country) as to how a court should decide if a plaintiff has placed his mental health at issue and waived the privilege.

Some courts have concluded that there are three approaches to determining if a waiver has occurred: "(1) a broad application of waiver; (2) a narrow application; and (3) a middle ground." *Glidwell v. Southern Illinois Univ.*, Case No. 22-1100-DWD, 2023 WL 2895147, at *4 (S.D. Ill. Apr. 11, 2023). "Under the broad application, the plaintiffs waive the privilege merely by seeking damages for emotional distress." *Laudicina*, 328 F.R.D. at 513. "Under the narrow application, the plaintiffs must place an affirmative reliance on the psychotherapist-patient communication to waive the privilege." *Id.* Finally, under the middle-ground approach, "no waiver occurs if the plaintiffs are only seeking 'garden variety' damages." *Id.* "Although there is no single definition for 'garden variety' damages, at least one court in this Circuit has defined 'garden variety' damages as meaning: the negative emotions that plaintiff experienced essentially as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that she might have suffered." *Coleman*, 2019 WL 7049918, at *1 (internal quotation marks and brackets omitted).

Other courts have concluded that the Seventh Circuit adopted the broad approach in *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006). There, in a case raising claims under Title VII of the Civil Rights Act of 1964 and Illinois law, the Seventh Circuit held that the district court "was correct to allow the defendant access to the plaintiff's psychiatric records." *Doe*, 456 F.3d at 718. The court explained that, "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Id.* Two decisions from the Northern District of Illinois have concluded that *Doe* "tells us precisely when" a waiver occurs: "a plaintiff places his or her psychological state in issue 'by seeking damages for emotional distress.'" *Taylor v. Chicago*, 14 C 737, 2016 WL 5404603, at *3 (N.D. Ill. Sept. 28, 2016) (quoting *Doe*, 456 F.3d at 718); *see also Laudicina*, 328 F.R.D. at 514 ("This Court believes that the Seventh Circuit in *Doe* applied waiver of the psychotherapist-patient privilege broadly."). Decisions from the Central and Southern Districts of Illinois are to the same effect. *See Kreuger v. Petrak*, Case No. 1:22-cv-1016, 2025 WL 354990, at *23-24 (C.D. Ill. Jan. 31, 2025); *Glidwell*, 2023 WL 2895147, at *4. Defendants urge the Court to follow these cases and hold that *Doe* adopted the broad approach, while plaintiffs ignore the *Doe* issue and urge the Court to apply the middle-ground approach.

4

The Court respectfully parts ways from *Taylor*, *Laudicina*, and the related cases and concludes that *Doe* did not adopt the broad approach to waiver.

The difficulties in trying to parse *Doe* for an answer to whether the Seventh Circuit adopted the broad approach stem from the fact that the court addressed the waiver question almost in passing. Nowhere in its opinion did the Seventh Circuit discuss the three approaches for deciding whether a claim for emotional distress waives the privilege, and nowhere did the court explain why it found the broad approach to be the preferable approach (if that is what the court was deciding) or consider whether it was consistent with the Supreme Court's decision in *Jaffee*. The court simply asserted that "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Doe*, 456 F.3d at 718. In the undersigned's view, "the lack of any in-depth analysis of the issue is easily"–and best–"explained if the [*Doe*] opinion is read narrowly as holding only that a waiver occurs *if* an emotional distress claim puts a person's psychological state in issue." *Hess v. Garcia*, Case No. 3:21-CV-101-JD-MGG, 2024 WL 2846474, at *8 n.14 (N.D. Ind. June 4, 2024) (emphasis in original); *cf. Flowers*, 224 F.R.D. at 224 (acknowledging that "[i]t is not clear" whether *Doe* adopted broad approach). Under that reading, *Doe* merely recognizes that a claim for emotional-distress damages *can* place the claimant's psychological state at issue, but it does not elaborate on what kind of emotional-distress claim results in an at-issue waiver. As a result, courts must decide on a case-by-case basis whether a claim for emotional-distress damages places a claimant's mental state at issue. *Accord Awalt*, 287 F.R.D. at 417 (quoting key language from *Doe* and observing that "[w]hether a plaintiff has placed their psychological state at issue in the litigation by claiming damages for emotion distress is a heavily fact-intensive, case-by-case inquiry into the nature of the damages claimed and the extent to which the plaintiff has put their psychological state at issue") (emphasis added); *Estate of DiPiazza v. City of Madison*, 16-cv-60-wmc, 2017 WL 1828920, at *3 (E.D. Wis. May 5, 2017) (quoting key language from *Doe* but observing that "[w]hat this commonsense principle means in practice however, and how it applies to the specific facts of a particular discovery dispute, varies"). In the absence of a more explicit discussion of the waiver issue, the Court concludes that *Doe* did not adopt the broad approach to waiver.

With no binding authority on this issue, the Court rejects defendants' argument that the broad approach to waiver applies and holds, for purposes of this case, that a claim for emotional-distress damages will not waive the psychotherapist-patient privilege if the damages are limited to "the negative emotions that plaintiff experienced essentially as the intrinsic result of the defendant's alleged conduct" and do not include "the resulting symptoms or conditions that [the plaintiff] might have suffered."[4] *Coleman*, 2019 WL 7049918, at *1 (internal quotation marks and brackets

---

[4] Because plaintiffs' damages are classic examples of "garden variety" damages, *see infra* 6-7, this case does not implicate any of the definitional uncertainties that plague the middle-

5

omitted). A waiver will occur, however, if the plaintiff "seeks damages for emotional distress for which they later sought psychotherapeutic treatment or otherwise affirmatively puts the privileged communication directly at issue in the lawsuit[.]" *Awalt*, 287 F.R.D. at 418.

Several considerations support the undersigned's decision to reject the broad approach and apply the middle-ground approach. First, the broad approach affords essentially no value to the psychotherapist-patient privilege. Effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears," and "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee*, 518 U.S. at 10. But if this privilege is "automatically waived whenever a plaintiff seeks any type of damages for emotional distress"–regardless of how tenuous the relationship between such damages and the claimant's mental state is–"the privilege loses value." *Apollo v. Stasinopoulos*, No. 18 C 6475, 2020 WL 995094, at *2 (N.D. Ill. Mar. 2, 2000). As other courts have observed, "that notion of waiver is too sweeping." *Estate of DiPiazza*, 2017 WL 1828920, at *3. Second, finding a waiver whenever a claim for emotional-distress damages is made is inconsistent with the concept of a waiver itself. A waiver is "an intentional and voluntary act of *disclosure* of a confidential communication or, at least, an intentional and voluntary act that places the communication 'in issue.'" *Swan v. Miss Beau Monde, Inc.*, 566 F. Supp. 3d 1048, 1058 (D. Or. 2021) (emphasis in original). Under the broad approach, the psychotherapist-patient privilege is waived whenever a plaintiff claims damages for emotional distress, regardless of whether the plaintiff's claim depends on a confidential communication with a therapist or whether the specifics of the claim actually inject the plaintiff's psychological state into the case. Third, the Court gives some weight to the fact that the broad approach is "[b]y far the most common approach, both within and outside" the Seventh Circuit. *Hess*, 2024 WL 2846474, at *7.

### 2. Goodlow's Mental State Is Not at Issue.

In this case, plaintiffs seek to recover damages for the emotional distress that Goodlow experienced in "the period from when Officer Pfingston kicked open the door to his bedroom, pointed his handgun at [Goodlow], and shot him." [169-7] 2. In their complaint, plaintiffs alleged that Pfingston's and the other defendants' conduct caused Goodlow to experience "mental anguish," "emotional anguish," "anxiety," and "emotional distress." *See* [33] at ¶¶ 48, 59, 64, 84. These kinds of allegations reflect "garden variety" damages for emotional distress and do not waive the privilege. *See Estate of DiPiazza*, 2017 WL 1828920, at *3 (holding, in § 1983 wrongful-death case,

---

ground approach. And because plaintiffs' damages have nothing to do with either Goodlow's, plaintiffs', or plaintiffs' heirs' mental-health treatment, the Court need not decide whether it should adopt the narrow approach to waiver (which is also an argument that neither side has addressed).

6

that damages "limited to the emotional distress experienced by Ms. DiPiazza in the last few moments of her life" were "garden variety" damages that did not waive privilege); *Awalt*, 287 F.R.D. at 419 (holding, in wrongful-death case with claims under § 1983 and Illinois law, that privilege was not waived where plaintiff "has not made any claims for damages for [decedent's] psychological treatment, condition or symptoms resulting from the alleged misconduct of the Defendants").

Plaintiffs also seek damages for the loss of society and companionship that was caused by defendants' wrongful conduct and Goodlow's resulting death. In their wrongful-death claims under Illinois law, plaintiffs allege that they and Goodlow's other heirs "have suffered pecuniary damages, including mental suffering, grief, loss of companionship, support, comfort, love, affection, protection and society of [Goodlow]." [33] at ¶ 69; *see also* [*id.*] at ¶ 123. The Court concludes that these damages, too, represent no more than "garden variety" damages that do not waive the privilege. On this point, the Court finds *Awalt* persuasive. The plaintiff in that case brought claims under § 1983 and Illinois tort law, seeking damages for loss of consortium and severe emotional distress after her husband died while in custody at a county jail. 287 F.R.D. at 411-12, 414 n.3. Defendants moved to compel plaintiff to produce records of her and her husband's mental-health treatment, contending that her damages claim injected plaintiff's own mental state into the case. *Id.* at 412. The district court denied the motion, finding that plaintiff's damages claims were "of the 'garden variety'" because they did not "put her specific psychological state at issue in this suit nor any psychological treatment she received as a result of [her husband's] untimely death." *Id.* at 419.[5] Likewise, the Court found that evidence of her husband's mental-health treatment remained privileged because plaintiff had not injected her husband's "psychological treatment, condition or symptoms into this case." *Id.*

*Awalt* is on all fours with this case. As in that case, plaintiffs are alleging "garden variety" damages–in the form of their own sadness, grief, loss of society, and loss of companionship–that defendants caused by allegedly killing Goodlow without justification. These are the kind of "negative emotions" that can arise "essentially as the intrinsic result of the defendant's alleged conduct," *Coleman*, 2019 WL 7049918, at *1, and that do not necessarily depend on or relate to one's psychological condition or any ensuing mental-health treatment. Furthermore, nothing in the complaint alleges, and nothing in the parties' briefing suggests, that plaintiffs intend to

---

[5] Defendants also sought discovery of records of plaintiff's counseling sessions with the Guardian Angels, which plaintiff attended after her minor daughter was sexually assaulted. *Awalt*, 287 F.R.D. at 422-23. Defendants argued that "because such traumatic incidents often have a significant impact on every member of the family and every relationship therein," these records were relevant to plaintiff's emotional state and her relationship with her husband. *Id.* at 422. The district court rejected this argument, too, finding that plaintiff had not "put her counseling or mental state into issue" beyond alleging garden-variety emotional damages, which "is not sufficient to find a waiver of the psychotherapist-patient privilege." *Id.*

7

introduce testimony from a psychiatrist or psychologist to establish their damages. *See Kronenberg v. Baker & McKenzie*, 747 F. Supp. 2d 983, 990 (N.D. Ill. 2010) (no waiver where plaintiff "is not relying upon any of his mental health records" or "presenting any testimony from any of his healthcare professionals with whom he may have consulted about mental health issues" to prove claim). Finally, it is not lost on the Court that the records defendants seek may be relevant to establishing the quality of Goodlow's relationship with plaintiffs and his other heirs. *See Estate of DiPiazza*, 2017 WL 1828920, at *3 (suggesting that "psychological evidence" may be "highly relevant" in "wrongful death claim brought under state law by a surviving spouse or relative"). But defendants' desire to introduce such psychological evidence to rebut plaintiffs' damages claims is irrelevant because "the very nature of a privilege is that it prevents disclosure of information that may be relevant to the case, in order to serve interests that are of over-arching importance." *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 530 (N.D. Ill. 1999). Thus, defendants here are in "no different position than any other litigant eager to obtain relevant evidence to which it cannot have access because the evidence falls within the scope of some testimonial privilege." *Kronenberg*, 747 F. Supp. 2d at 990.

For all these reasons, the Court holds that plaintiffs have not waived the psychotherapist-patient privilege by seeking to recover for the garden-variety emotional-distress damages that they and Goodlow experienced because of defendants' alleged conduct.

### B. Express Waiver

An express waiver of the psychotherapist-patient privilege occurs "primarily when information that would otherwise be privileged is not kept confidential." *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015); *see also In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) ("An express waiver is the intentional, voluntary relinquishment of a known right.") (internal quotation marks omitted). Defendants argue that the psychotherapist-patient privilege was expressly waived when (1) Goodlow discussed "his mental health, diagnoses, and medication status" with during an encounter with a Wheaton police officer in January 2021, and (2) one of plaintiffs' attorneys made comments about Goodlow's mental health–including stating that Goodlow suffered from bipolar disorder and alleging he was suffering "some form of mental health crisis" at the time of the shooting–during a press conference in early February 2024. *See* [171] 4. The Court rejects both arguments. Defendants have cited no authority to support their contention that Goodlow waived the privilege– essentially for all time and for all purposes–when he discussed his mental health with a police officer more than three years before this case was filed. Nor can the Court see how an attorney's statement during a pre-suit press conference that his client suffers from bipolar disorder and may have been experiencing a mental-health crisis when he was shot waives the privilege. Given the lack of any authority or explanation as to how these two incidents resulted in a privilege waiver, the Court rejects

8

defendants' express-waiver arguments. *See Promier Prods., Inc. v. Orion Capital LLC*, Case No. 21 CV 1094, 2023 WL 6907958, at *12 (N.D. Ill. Sept. 22, 2023) (failure to develop argument results in forfeiture).

## Conclusion

Defendants' motion to compel [169] is denied.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: June 10, 2025**